UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CHAO FAN XU, *et al.*,<br><br>　　　　　　Defendants. | 2:02-cr-0674-PMP-LRL<br><br>MOTIONS TO DISMISS SECOND SUPERSEDING INDICTMENT (##317,318) |

**REPORT & RECOMMENDATION**

　　　　Before the court are defendant Chao Fan Xu's Motion to Dismiss Pursuant to the Court's Supervisory Power (#317) and Motion to Suppress Pursuant to the Court's Supervisory Power (#318), where, in both instances, he requests that the court dismiss the Second Superseding Indictment. Defendants Ying Yi Yu and Wan Fang Kuang have filed joinders to each motion. (##329, 330, 334, 335). The government has filed oppositions to all joined defendants. (##347,348). No replies have been filed.

**BACKGROUND**

　　　　The charges in this case stem from a scheme allegedly entered into by Chao Fan Xu and others to defraud the Bank of China of at least $485 million, launder the stolen money through, among other places, Hong Kong, Canada, and the United States, and flee the People's Republic of China ("China") and immigrate to the United States by entering into sham marriages with naturalized U.S. citizens. All defendants are charged with RICO Conspiracy, a violation of 18 U.S.C. § 1962(d), Money Laundering Conspiracy, a violation of 18 U.S.C. § 1956(h), and Conspiracy to Transport Stolen Moneys, a violation of 18 U.S.C. § 371. *Id.* at 1. Chao Fan Xu is also charged with Use of a Fraudulently Obtained Visa,

a violation of 18 U.S.C. §§ 1546(a) and 2. *Id.* at 2. Wan Fan Kuang and Ying Yi Yu are charged in three counts with Use of a Fraudulently Obtained Passport, a violation of 18 U.S.C. §§ 1542 and 2. *Id.*

## DISCUSSION

Citing a United Nations Report of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, as well as numerous other periodicals and reports on human rights abuses in China, Chao Fan Xu contends that the Second Superseding Indictment should be dismissed pursuant to the court's supervisory power because "[e]vidence from China cannot be trusted." Motion to Dismiss (#317) at 4. He makes essentially the same argument in his Motion to Suppress (#318), except that instead of arguing the Second Superseding Indictment should be dismissed outright, he maintains that all evidence and testimony originating in China should be suppressed and that the Second Superseding Indictment must be dismissed as a result. Motion to Suppress (#318).

Use of a court's supervisory power to effect the sanction of dismissal has been limited to cases involving "outrageous government conduct." *See United States v. Fernandez*, 388 F.3d 1199, 1238 (9th Cir. 2004) (citing *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004)). "'The defense of outrageous government conduct is limited to extreme cases in which the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" *Id.* (quoting *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003)). Even if such conduct does not rise to the level of a due process violation, a court may use its supervisory power to dismiss an indictment if prosecutorial misconduct is found to have occurred. *Fernandez*, 388 F.3d at 1239. To justify the dismissal of an indictment for non-due process prosecutorial misconduct, the court must find that the conduct was flagrant and substantially prejudicial to the defendant. *Id.* (citation omitted).

Further, "The Supreme Court has recognized only three legitimate bases for the exercise of the supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct. *United States v. Simpson*, 927 F.2d 1088, 1090

(9th Cir. 1991) (citing *United States v. Hasting*, 461 U.S. 499, 505 (1983)). "[J]udges exercise substantial discretion over what happens inside the courtroom[,]" but should not exercise this discretion for activity that occurs outside the courtroom unless it violates the Constitution, a federal statute or a procedural rule. *Id.* at 1091 (citations omitted).

In this case, Chao Fan Xu has submitted various reports from governmental entities, non-governmental organizations and periodicals condemning China for human rights abuses including torture and witness intimidation to coerce witness testimony and fabricate evidence. Mot. (##317,318). For instance, he refers to an Amnesty International report stating that "[t]he use of torture and ill-treatment in China as a means to extort confessions and other incriminating evidence from suspects, defendants and witnesses is widely reported." Mot. (#317) at 8 (citing *People's Republic of China Executed "according to law"? - the Death Penalty in China*, Amnesty International, Mar. 22, 2004, at 6, http://www.amnesty.org/en/report/info/ASA17/003/2004). Chao Fan Xu contends that these reports suggest that all documentary and testimonial evidence derived in this case from China will be tainted, and therefore should not form the basis of a conviction in a U.S. court. He also asserts that oppressive Chinese policies have prevented him from interviewing government witnesses located in China, seeking his own witnesses there, or performing effective cross-examination. Mot. (#317) at 11-12. The Second Superseding Indictment, according to Chao Fan Xu, should be dismissed as a result.

Chao Fan Xu fails to specify any evidence he believes might be tainted by the Chinese law enforcement practices he complains of. He proffers nothing to show that any misconduct, whether on the part of the Chinese or United States governments, has occurred. Therefore, there is no basis on which the court may consider exercising its supervisory power to suppress evidence obtained from China, or to dismiss the Second Superseding Indictment—no conduct is cited that the court would otherwise examine in making a determination as to alleged due process violations or non-due process prosecutorial misconduct.

Additionally, Chao Fan Xu cites no specific instance where his preparation for trial has been impeded by the United States or Chinese governments. In fact, the government notes in its brief that

3

it has advised defense counsel on several occasions of the availability of letter rogatory and has offered assistance in discovery matters as early as January 2005, but it was not until November 29, 2006 that Chao Fan Xu requested documents. Opp'n (#347) at 6. The government immediately requested such materials and notified counsel when they were produced. *Id.* The government states that it is now in the process of organizing and shipping the materials to Las Vegas for defense review. *Id.* The government also indicates that, in preparing for the first set of depositions of Chinese and Hong Kong witnesses, it specifically asked defense counsel for any persons they wished to depose as potential defense witnesses and noted that it would include such witnesses in its request for depositions; however, no names were ever provided by the defendants. *Id.*

Lastly, in addressing other motions in this case, the court has noted that defense counsel have had the opportunity to cross-examine witnesses located in China. *See*, *e.g.*, Order (#387). The issue with respect to the cross-examination of witnesses has not been witness availability, but rather the permissible scope of cross-examination under the Federal Rules of Evidence. *See id.*

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that the court deny Chao Fan Xu's Motion to Dismiss Pursuant to the Court's Supervisory Power (#317) and Motion to Suppress Pursuant to the Court's Supervisory Power (#318).

DATED this 23rd day of January, 2008.

/s/ Leavitt

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**