GREGORY A. BROWER
United States Attorney
BRUCE OHR
Chief, Organized Crime &
  Racketeering Section
1301 New York Avenue, NW, Suite 700
Washington, D.C. 20005
Telephone: 202-353-9366
Facsimile: 202-514-3601
ERIC JOHNSON
KRISTA TONGRING
RONALD CHENG
Attorneys for the Government

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>XU Chaofan, also known as )<br>HUI Yat Fai, *et al.*, )<br>)<br>Defendant. )<br>_____ ) | CR-S-02-0674-PMP(LRL)<br><br>**UNITED STATES' SENTENCING**<br>**MEMORANDUM IN RESPONSE TO**<br>**OBJECTIONS OF DEFENDANT XU**<br>**CHAOFAN (DOC. NO. 732)**<br><br>Date:  May 5, 2009<br>Time: 9:00 a.m. |

Comes now, the United States, by and through its undersigned counsel, and respectfully submits this sentencing memorandum in response to the objections of defendant Xu Chaofan (Doc. No. 732), filed on April 8, 2009, for the sentencing scheduled for May 5, 2009.[1]

_____

[1]       As with its initial sentencing memoranda, the government has submitted separate responsive sentencing memoranda by defendant.  The discussion is the same for all defendants, except for the responses to individual objections in Section D (for defendants XU Chaofan and KUANG Wan Fang) and the discussion of factors identified by defendant under 18 U.S.C. § 3553(a)(1) in Section E.1.

The government has requested defendants XU Chaofan, XU Guojun, and KUANG Wan Fang to provide any reports that Dr. Eddie Chiu, a psychologist in the San Francisco Bay Area who works with Chinese-speaking problem gamblers in that area, has prepared upon which those defendants intend to rely, as well as documents relied upon by Chiu and Dr. Gareth Lasky in preparing their reports and the defendants' "written assignments" that were provided to Lasky. XU Chaofan makes reference to Chiu's report, but that report is not attached.  Defendant YU

1    The United States' position is based on this memorandum, the United States' memorandum

2   filed on March 16, 2009, and the files and records of this case.

3   DATED:          April 24, 2009              Respectfully Submitted,

4                                              GREGORY A. BROWER
                                               United States Attorney
5
                                               ERIC JOHNSON
6                                              Assistant United States Attorney

7
                                                      /s/
8                                              KRISTA TONGRING
                                               Trial Attorney
9
                                               RONALD CHENG
10                                             Special Trial Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     _____

25   Ying Yi has attached reports of Lasky and Chiu, as well as her written assignment, to her
26   submission.  Defendant XU Guojun has attached Lasky's report to his submission and has
     separately provided his written assignment to the government.  Defendant KUANG Wan Fang
27   has attached Lasky's report to her submission, but has informed the government she is not relying
     on Lasky's report.  To date, the government has not received the remaining documents requested.
28

1

TABLE OF CONTENTS

2

DESCRIPTION                                                                                    PAGE

3

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................  1

4  A.   It Is Appropriate to Calculate the Base Offense Level under Guideline
5       Section 2S1.1(a)(1) to Address Defendants' Criminal Responsibility for the
       Underlying  Offense of "An Offense Against a Foreign Nation
6       Involving . . . Fraud . . . Against a Foreign Bank"...............................  1

7  B.   The Other Guideline Claims Raised by XU Chaofan Are Without Merit.............  6

8       1.   The Court May Properly Consider "Foreign Conduct" in Determining the
            Offense Level for Money Laundering Related to Fraud Against a Foreign Bank..  6

9       2.   Application of the Current Version of Guideline Section 2S1.1 Does Not
10           Violate the Ex Post Facto Clause........................................  9

11      3.   Defendant XU Chaofan Abused a Position of Trust under Guideline
            Section 3B1.3............................................  10

12      4.   An Enhancement under Section 2B1.1(b)(9) for Commission of the Offense
13           outside the United States or Sophisticated Means is Warranted..............  11

   C.   Defendant KUANG's Guideline Arguments Are Without Merit...................  11

14 D.   Defendant XU Chaofan's Objections to His Pre-Sentence Report Are Without Merit...  13

15 E.   Defendants' Analysis under 18 U.S.C. § 3553(a) Fails to Account Properly for the Entire
16      Offense Conduct in This Case............................................  14

17      1.   XU Chaofan's Grounds..............................................  15

18      2.   The Totality of the Factors in § 3553(a) Support a Sentence Within
19           the Guidelines............................................  17

20 F.   Conclusion............................................  18

21

22

23

24

25

26

27

28

iii

1

TABLE OF AUTHORITIES

2  DESCRIPTION                                                                PAGE

3  CASES:

4  The Antelope,
         6 L. Ed. 268 (1825). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
5
   Pasquantino v. United States,
6        544 U.S. 349 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7  United States v. Ali,
         266 F.3d 1242 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
8
   United States v. Ameline,
9        400 F.3d 646 (9th Cir. 2005),
         reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005),
10       superseded by 409 F.3d 1073 (9th Cir. 2005) (en banc). . . . . . . . . . . . . . . . . . . . . 15

11 United States v. Anderson,
         526 F.3d 319 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
12
   United States v. Angelos,
13       345 F. Supp. 2d 1227 (D. Utah 2004), aff'd, 433 F.3d 738 (10th Cir. 2006). . . . . . . . . . 17

14 United States v. Azeem,
         946 F.2d 13 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
15
   United States v. Barrios,
16       993 F.2d 1522 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 United States v. Beardslee,
         197 F.3d 378 (9th Cir. 1999),
18       amended 204 F.3d 983 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

19 United States v. Blackmon,
         557 F.3d 113 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
20
   United States v. Carty,
21       520 F.3d 984 (9th Cir.) (en banc), cert. denied, 128 S. Ct. 2491 (2008). . . . . . . . . . . . . 14

22 United States v. Charry Cubillos,
         91 F.3d 1342 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
23
   United States v. Charon,
24       442 F.3d 881 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 United States v. Chunza-Plazas,
         45 F.3d 51 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
26
   United States v. Cruzado-Laureano,
27       440 F.3d 44 (1st Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28

iv

TABLE OF AUTHORITIES (CONTINUED)

<u>DESCRIPTION</u>                                                                                           PAGE

<u>CASES (Cont'd)</u>:

<u>United States v. Davoudi</u>,
     172 F.3d 1130 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>United States v. Ford</u>,
     989 F.2d 347 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

<u>United States v. Gibbs</u>,
     182 F.3d 408 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

<u>United States v. Greer</u>,
     285 F.3d 158 (2d Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

<u>United States v. Johnson</u>,
     297 F.3d 845 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

<u>United States v. Krutsinger</u>,
     449 F.3d 827 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>United States v. Lazarenko</u>,
     __ F.3d __, 2009 WL 961532 (9th Cir. Apr. 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . .  7

<u>United States v. Lewis</u>,
     67 F.3d 225 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

<u>United States v. Martinez-Ramos</u>,
     184 F.3d 1055 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>United States v. Matta-Ballesteros</u>,
     71 F.3d 754 (9th Cir. 1995), <u>amended</u>, 98 F.3d 1100 (9th Cir. 1996). . . . . . . . . . . . . . . .  3

<u>United States v. Mario Melo</u>,
     No. 06-11566, 259 Fed. Appx. 248,
     2007 WL 4374414 (11th Cir. Dec. 17, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

<u>United States v. Morales-Olivarria</u>,
     119 F.3d 8 (table), 1997 WL 406738 (9th Cir. July 16, 1997). . . . . . . . . . . . . . . . . . .  10

<u>United States v. Paley</u>,
     442 F.3d 1273 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

<u>United States v. Threadgill</u>,
     172 F.3d 357 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

<u>United States v. Tzoc-Sierra</u>,
     387 F.3d 978 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

STATUTES:

    Title 8, United States Code:

        Section 1326.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Title 12, United States Code:

        Section 3101(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Section 3101(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Section 3101(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 3101(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 3101(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Title 18, United States Code:

        Section 20(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Section 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        Section 1014.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Section 1956(c)(7)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 11

        Section 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-18

RULES:

Federal Rules of Appellate Procedure:
    Rule 32.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ninth Circuit Rules:
    Rule 36-3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

TABLE OF AUTHORITIES (CONTINUED)

2   <u>DESCRIPTION</u>                                                                   <u>PAGE</u>

3   <u>UNITED STATES SENTENCING GUIDELINES</u>:

4       Section 1B1.3(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

5       Section 1B1.3(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6       Section 2B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 12

7       Section 2B1.1(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8       Section 2B1.1(b)(14)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9       Section 2B1.1(b)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

10      Section 2D1.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11      Section 2S1.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-6, 9-12

12      Section 2S1.1(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 12

13      Section 2T1.3(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14      Section 3B1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15      Section 3B1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16      Section 3D1.2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

17      Section 4A1.2(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18      Section 4A1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19      Appendix C, amendment 634 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 12

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

A.    It Is Appropriate to Calculate the Base Offense Level under Guideline Section 2S1.1(a)(1) to Address Defendants' Criminal Responsibility for the Underlying Offense of "An Offense Against a Foreign Nation Involving . . . Fraud . . . Against a Foreign Bank"

All defendants assert that their offense level should be calculated under Guideline Section 2S1.1(a)(2), which focuses on the value of the laundered funds rather than Section 2S1.1(a)(1), which focuses on the underlying offense.  In so doing, defendants erroneously seek to limit their criminal responsibility to the their acts of transporting tainted money into the United States, rather than the underlying offense of fraud against a foreign bank.  This constricted view of the offense conduct in this case is reflected in defendants' assertion that the victim in this case is not the Bank of China.  (E.g., Doc. No. 726, page 5, lines 12-13).  The underlying offense of fraud against a foreign bank was the basis for the money laundering conspiracy charge, which alleged that the conspiracy to engage in monetary transactions in criminally derived property involved property derived from "fraud, and a scheme and attempt to defraud, against a foreign bank." (Doc. No. 151, Second Superseding Indictment, p. 7, lines 1-11).  The Guidelines make clear that defendant's participation in the underlying offense of fraud against the Bank of China is a proper basis for the calculations in the Pre-Sentence Reports.

Guideline Section 2S1.1(a)(1) states that the relevant base offense level is:

The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined .
. . .

Otherwise, the base offense level under Section 2S1.1(a)(2) is "8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds . . . ."  Section 2S1.1 was amended in 2001 to move the focus of the Guideline away from "the amount of funds laundered, regardless of the culpability of the offender" to the culpability of the offender.  See United States v. Blackmon, 557 F.3d 113, 119 (3d Cir. 2009) (describing history of amendment).  Thus, the Sentencing Commission recognized:

1

2

> [T]his amendment ties offense levels for money laundering more closely to the underlying conduct that was the source of the criminally derived funds by separating money laundering offenders into two categories for purposes of determining the base offense level. For direct money launderers (offenders who commit or would be accountable under § 1B1.3(a)(1)(A) (Relevant Conduct) for the underlying offense which generated the criminal proceeds), subsection (a)(1) sets the base offense level at the offense level in Chapter Two (Offense Conduct) for the underlying offense (i.e., the base offense level, specific offense characteristics, cross references, and special instructions for the underlying offense). For third party money launderers (offenders who launder the proceeds generated from underlying offenses that the defendant did not commit or would not be accountable for under § 1B1.3(a)(1)(A)), subsection (a)(2) sets the base offense level at level 8, plus an increase based on the value of the laundered funds from the table in subsection (b)(1) of § 2B1.1 (Theft, Property Destruction, and Fraud).

3

4

5

6

7

8

9 U.S.S.G. App. C, amend. 634 (2001) (reason for amendment).

10      When the "offense level for the underlying offense" is used under Section 2S1.1(a)(1), it is

11 appropriate to use the entire relevant conduct for the underlying offense, as opposed to only the

12 laundered funds. In Blackmon, the Third Circuit ruled that relevant conduct can be considered in

13 determining the underlying offense level under Section 2S1.1(a)(1). Blackmon, 557 F.3d at 121-

14 23. In doing so, the Third Circuit held that it was ruling in accord with the First, Fifth, and Sixth

15 Circuits' prior rulings on this issue. Id. at 121 (citing United States v. Cruzado-Laureano, 440

16 F.3d 44, 48 (1st Cir. 2006); United States v. Charon, 442 F.3d 881, 887-88 (5th Cir. 2006); and

17 United States v. Anderson, 526 F.3d 319 (6th Cir. 2008)). Consideration of relevant conduct is

18 especially appropriate when, as here, counts of conviction must be grouped under Guideline

19 Section 3D1.2(d), of which relevant conduct under Section 1B1.3(a)(2) is an inherent part. See

20 Blackmon, 557 F.3d at 122-23 (describing application of grouping rules under Section 3D1.2).

21      Here, use of Section 2S1.1(a)(1) is appropriate, given that each defendant is responsible

22 for the underlying offense -- that is, the specified unlawful activity -- of fraud against a foreign

23 bank. Defendants XU Chaofan and XU Guojun clearly committed or were responsible for that

24 fraud, in that they were the leaders of the scheme to defraud the Bank of China of the $482

25 million through the foreign exchange fraud and various loan schemes described at trial, directed

26 the transfers through the Ever Joint entities, and engaged in the immigration fraud that would

27 secure their escape from the authorities should the scheme be discovered. Similarly, defendants

28

2

1  KUANG Wan Fang and YU Ying Yi committed and were responsible for the fraud, given their

2  active participation in numerous transactions in Hong Kong, the United States, and elsewhere, as

3  well as their similar participation in the immigration fraud that was part of the plan to evade the

4  authorities.

5        The Sixth Circuit's opinion in Anderson supports application of Section 2S1.1(a)(1).  The

6  defendant in Anderson was the mother of a drug trafficker and pleaded guilty to a money

7  laundering charge.  Anderson, 526 F.3d at 321.  The defendant was aware of her son's drug

8  trafficking business and helped him conceal his drug proceeds, used her name to conceal her son's

9  purchase of a Lincoln Navigator with cash, and was present on at least one transaction that her son

10 conducted and retrieved money for her son to pay for drugs that were in plain view.  Id. at 322.

11 The defendant also picked up drug money, delivered money to her son for him to purchase drugs,

12 and stored guns for the son.  Id.  Based on this evidence, the Sixth Circuit held that the defendant

13 was a participant in the drug conspiracy, particularly given the principle that "evidence connecting

14 a particular defendant to the conspiracy need only be slight."  Id. at 325 (quoting United States v.

15 Gibbs, 182 F.3d 408, 421 (6th Cir. 1999) (internal quotation marks omitted)); see also United

16 States v. Matta-Ballesteros, 71 F.3d 754, 765 (9th Cir. 1995) (only slight connection required to

17 tie defendant to conspiracy), amended, 98 F.3d 1100 (9th Cir. 1996).  Accordingly, the defendant

18 was accountable for the underlying conspiracy under Guideline Section 2D1.1(a)(1), and the

19 sentencing court could determine the base offense level under the drug trafficking guideline,

20 Section 2D1.1(a).  Id. at 325-27.

21       Here, the submission made by the government in opposition to defendants' motions for

22 judgments of acquittal under Rule 29 demonstrated defendants KUANG and YU were responsible

23 for the RICO conspiracy.  (Doc. No. 655).  As described in that opposition, (1) these defendants

24 conducted transactions to disguise the source of funds stolen fraudulently taken from the Bank of

25 China, such as using their names to purchase the Canadian homes in Richmond, British

26 Columbia, which in fact were owned by XU Chaofan and Xu Guojun; (2) KUANG engaged in

27 transactions in Las Vegas with funds that originated with KWONG Wa Po, who in turn received

28

3

significant funds from Ever Joint; (3) these defendants had knowledge that their husbands used false names;(4) KUANG Wan Fang and YU Ying Yi, like YU Xu Hui, were aware that at least one account into which funds had been transferred had been frozen and took actions to evade the freezing of other accounts; and (5) beginning in 1994, KUANG Wan Fang and YU Ying Yi entered into the false marriages with Wai Kwong HO and Steve CHENG to obtain ultimately U.S. citizenship and travel documents, which allowed them to escape with XU Chaofan and XU Guojun to the United States in October 2001.  Defendants appear to try to separate their criminal immigration conduct from the underlying fraud scheme, but as was demonstrated at trial, these activities were all directed to the success of the fraud scheme.

Defendants' supporting authority is unavailing.  Defendant XU Chaofan relies upon United States v. Ali, 266 F.3d 1242 (9th Cir. 2001), which concerns the sufficiency of proof at trial for the federally insured status of the victim bank for bank fraud under 18 U.S.C. § 1344 and making a false statement to obtain a bank loan under 18 U.S.C. § 1014, and United States v. Lewis, 67 F.3d 225 (9th Cir. 1995), which concerns whether domestic branch of a foreign bank is subject to the § 1344 bank fraud statute.  (Doc. No. 732, p. 4, l. 14 to p. 6,l. 3).  These cases do not bear on the sentencing issue whether there is an "underlying offense" for Section 2S1.1(a)(1) purposes, particularly when the specified underlying  activity here for the money laundering offense is "an offense against a foreign nation involving . . . fraud . . . against a foreign bank" under 18 U.S.C. § 1956(c)(7)(B)(iii) (emphasis added).  In contrast, Lewis examined the terms "federal branch" and "state branch," which are defined under 12 U.S.C. § 3101(6) and (12) of the International Banking Act of 1978, Lewis, 67 F.3d at 231, but did not deal with the operative term here:  "foreign bank" under 12 U.S.C. § 3101(7) of the same Act.  A bank's status as a "foreign bank" does not depend on U.S. federal regulation and indeed is defined as "any company organized under the laws of a foreign country . . . which engages in the business of banking . . . ."  12 U.S.C. § 3101(7).  Indeed, this Court necessarily determined that the Bank of a China was a foreign bank when it granted the government's request in its Notice of Foreign Law and gave the instruction that a fraud or a scheme to defraud the Bank of China was a felony under Chinese law.  (Doc. Nos. 379, 445).

4

Thus, the Court may properly consider the fraud against the Bank of China in determining the base offense level under Section 2S1.1(a)(1).

Defendant XU Chaofan also argues that the Bank of China is not a "financial institution" as defined in 18 U.S.C. § 20(9), that is, "a branch or agency of a foreign bank." (Doc. No. 732, p. 6, l. 11 to p. 7, l. 3). Defendant argues that, because "branch" and "agency" are defined in 12 U.S.C. § 3101(1) and (3), respectively, as an office or place of business "located in any State of the United States," the Kaiping sub-branch of the Bank of China cannot be considered for purposes of Section 2S1.1. This argument fails, because the underlying offense, 18 U.S.C. § 1956(c)(7)(B)(iii), refers only to a fraud against a foreign bank and not to a "branch" or "agency" of a foreign bank.

Defendant XU Chaofan also argues that the loss figure cannot be determined. (Doc. No. 732, p. 8, l. 5 to p. 9, l. 6). In fact, the testimony of the Bank auditors made clear that there was a loss of $482 million from the interbranch account. As LI Qizhang testified, the defense's own exhibit A1 was a ledger that sub-branch finance and accounting department employee XU Rongzhuo provided him that detailed a running total of sums unlawfully taken from bank accounts, which totalled $482 million.

| EXHIBIT | AMOUNT (US DOLLARS) | DESCRIPTION |
| --- | --- | --- |
| 527 | $147 million | Funds stolen from interbranch accounts to cover up losses in foreign exchange trading |
| 513 | $181 million | Off the book loans |
| 40(3) | $95 million | False loans |
| 555 | $7 million | Stolen from interbranch accounts |
| 541 | $1.55 million | Funds stolen from interbranch accounts to cover up losses from Foreign Exchange Center |
| 556 | $1.6 million | From interbranch accounts to Zhong Hui for expenses |
| 523 | $4 million | To Ever Joint from Jiangmen branch; repaid by interbranch accounts |
| 524 | $10.28 million | From interbranch accounts to provincial branch to cover losses |

5

| 525 | $18 million | Funds from interbranch accounts and sent from Yong Ping to Ever Joint |
| 526 | $0.28 million | Funds from interbranch accounts and sent from Yong Ping to Ever Joint |
| 554 | $16.05 million | Funds stolen from interbranch accounts |
| TOTAL | $481.76 million | |

Defendant KUANG Wan Fang cites the Eleventh Circuit's unpublished disposition in United States v. Mario Melo, No. 06-11566, 259 Fed. Appx. 248, 2007 WL 4374414 (11th Cir. Dec. 17, 2007). (Doc. No. 726, p. 14, ll.21-26). The issue in that case was whether a third-party money launderer could be held accountable for future, undelivered drug trafficking proceeds that an undercover agent anticipated delivering. Id., 259 Fed. Appx. at 255. The case never dealt with whether the defendant should be criminally responsible for the underlying drug trafficking, given that the court, apparently with no objection by the parties, used the third-party money laundering provision in Section 2S1.1(a)(2). Accordingly, the unpublished disposition in Melo is inapposite.

In contrast, none of these defendants here can be deemed "third party money launderers." Each engaged in and is responsible for the underlying offense. The base offense levels should be calculated under the entirety of Section 2B1.1, as required by Section 2S1.1(a)(1).[2]

B.   The Other Guideline Claims Raised by XU Chaofan Are Without Merit

    1.   The Court May Properly Consider "Foreign Conduct" in Determining the Offense Level for Money Laundering Related to Fraud Against a Foreign Bank

Defendant XU Chaofan claims that conduct outside the United States may not be considered at sentencing. (Doc. No. 732, p. 10, l. 23 to p. 13, l. 6). Those cases are distinguishable because of the particular Guideline at issue in each of those cases. As discussed above, the specified underlying activity at issue here is "an offense against a foreign nation

---

[2]    Because the base offense level is determined under Guideline Section 2S1.1(a)(1), defendant XU Chaofan's citations to the Eleventh Circuit's decisions in United States v. Barrios, 993 F.2d 1522 (11th Cir. 1993), and United States v. Paley, 442 F.3d 1273 (11th Cir. 2006), concerning whether interest should be considered part of the value of "laundered funds" under Guideline Section 2S1.1(a)(2), are inapposite. (Doc. No. 732, p. 9, l. 9 to p. 10, l. 21).

6

involving . . . fraud . . . against a foreign bank." 18 U.S.C. § 1956(c)(7)(B)(iii).  As the

government cited in its response to defendants' objections to the magistrate judge's report on the

Notice of Foreign Law, the Supreme Court's decision in Pasquantino v. United States, 544 U.S.

349 (2004), makes clear that foreign conduct can be the basis for a prosecution for the violation of

United States law.  In Pasquantino, defendants were convicted of wire fraud based on a scheme to

import liquor from Canada to the United States without paying Canadian alcohol

taxes. Defendants argued the prosecution violated the "common-law revenue rule," which bars

courts from enforcing the tax laws of foreign sovereigns, and which in turn is a product of the rule

that "[t]he Courts of no country execute the penal laws of another."   544 U.S. at 360-61 (quoting

The Antelope, 6 L. Ed. 268 (1825)).  The Pasquantino Court rejected that argument.  The Court

noted that this was a "criminal prosecution brought by the United States in its sovereign capacity

to punish domestic criminal conduct." 544 U.S. at 362.  The Supreme Court held that the revenue

rule cases that the defendants in Pasquantino cited were distinguishable because the instant case

involved the government's enforcement of its own domestic criminal law and embodied the

"policy choice" of the Legislative and Executive Branches "to free the interstate wires from

fraudulent use, irrespective of the object of the fraud." Id. at 364, 370.  There was enforcement of

Canadian tax law in an "attenuated" sense, but not in a sense that violated the revenue rule. Id. at

366-68. Similarly, the money laundering law's reference to fraud against a foreign bank makes

clear that the fraud against the Bank of China is not only an appropriate focus of the criminal

violation, but also of the corresponding sentence. See also United States v. Lazarenko, __ F.3d

__, 2009 WL 961532 at * 10 (9th Cir. Apr. 10, 2009) (money laundering convictions involved

foreign offense of extortion as specific unlawful activity).

　　　　The three cases cited by defendant XU Chaofan are distinguishable.  In United States v.

Azeem, 946 F.2d 13 (2d Cir. 1991), the issue involved whether drugs shipped from Pakistan to

Cairo should be considered together with drugs shipped from Pakistan to New York.  As the

Second Circuit subsequently held, Azeem does not apply in cases in which the applicable criminal

statute "specifically covers conduct outside the United States." United States v. Greer, 285 F.3d

1  158, 179-80 (2d Cir. 2002) (distribution of drugs in Canada covered by Maritime Drug Law

2  Enforcement Act).  Thus, just as with the foreign drug transaction in <u>Greer</u>, the fraud against a

3  foreign bank at issue may be considered here.

4        In <u>United States v. Ford</u>, 989 F.2d 347 (9th Cir. 1993), the Ninth Circuit considered

5  whether the Section 2T1.3(b)(1) enhancement for failure to report income exceeding $10,000

6  from "criminal activity."  The activity at issue was tax fraud in Canada, and the Ninth Circuit held

7  that the term "criminal activity" in Section 2T1.3 was defined as "any conduct constituting a

8  criminal offense under federal, state, or local law."  <u>Ford</u>, 989 F.2d at 350.  The Ninth Circuit

9  noted that a formulation in terms of "any conduct that <u>would constitute</u>" such a violation would

10  allow consideration of a hypothetical test, but the language of the Guideline precluded such

11  analysis.  <u>Id.</u>  The situation in this case is different, because the governing statute makes express

12  reference to fraud against a "foreign bank" and the Guideline speaks only of an "underlying

13  offense" without any jurisdictional limitation.

14        In <u>United States v. Chunza-Plazas</u>, 45 F.3d 51 (2d Cir. 1995), the Second Circuit reversed

15  an upward departure for an immigration fraud defendant based on his violent acts overseas on

16  behalf of the Colombian Medellin drug cartel.  The Second Circuit noted that a departure in

17  criminal history category under Guideline Sections 4A1.2(h) and 4A1.3 were improper because

18  the foreign conduct was not "similar," as required by Section 4A1.3(e), to the offense of

19  conviction.  <u>Id.</u> at 56.  The Second Circuit also reversed a departure in criminal history category,

20  based on <u>Azeem</u>.  Given the interpretation of <u>Azeem</u> in <u>Greer</u>, <u>Chunza-Plazas</u> must be limited to a

21  situation in which the immigration fraud offenses of conviction must be deemed "not part of the

22  same crimes as committing homicide and terrorist acts for the Medellin cartel in Colombia."

23  <u>Chunza-Plazas</u>, 45 F.3d at 57-58.  In contrast, the RICO and money laundering conspiracies make

24  express reference to the foreign bank fraud.

25

26

27

28

1

2        **2.**    <u>Application of the Current Version of Guideline Section 2S1.1 Does Not Violate the Ex Post Facto Clause</u>

3        Defendant XU Chaofan argues that, even if Section 2S1.1(a)(1) is applicable, it would

4   violate the Ex Post Facto Clause to apply this Guideline, as it went into effect on November 1,

5   2001.  U.S.S.G. App. C, amend. 634 (2001).  (Doc. No. 732, p. 13, l. 7 to p. 14, l. 22).  Defendant

6   relies on a case involving a more limited conspiracy charge than the one at issue in this case.  As

7   stated in the second superseding indictment and as proven at trial, the RICO conspiracy spanned

8   the November 1, 2001, effective date and involved not only the fraud and transport of funds, but

9   also travel from China through other regions and countries to the United States to flee in case the

10  fraud was discovered.

11       Defendant relies upon <u>United States v. Beardslee</u>, 197 F.3d 378 (9th Cir. 1999), <u>amended</u>

12  204 F.3d 983 (9th Cir. 2000) .  <u>Beardslee</u> involved a conspiracy to commit arson that occurred in

13  1989.  Subsequent overt acts stated that it was a part of the conspiracy for the defendant to make

14  false statements, make false insurance claims, and compensate an individual named Venable for

15  actually committing the arson.  <u>Id.</u> at 388.  The Ninth Circuit affirmed the use of the version of the

16  applicable Guideline as it existed before a November 1, 1990, amendment, because those acts that

17  occurred after the amendment "relate to whether [another individual named] Glover, who

18  participated in the arson without [defendant's] prior knowledge, would be compensated for his

19  role."  <u>Id.</u>  Those later acts "bear only a tenuous relationship to [defendant's] continuing

20  involvement in the conspiracy."  <u>Id.</u>

21       In contrast, the acts occurring after November 1, 2001, in which defendants continued

22  their flight from the Chinese and other law enforcement authorities, made withdrawals in Canada,

23  and subsequently entered the United States and relocated themselves within the United States to

24  Oklahoma and Kansas may properly be considered as part of the conspiracy.  The second

25  superseding indictment states that the purposes of the RICO enterprise include not only enriching

26  the members through the fraud, fund transfers, and money laundering, but also "[e]nabling the

27  members and associates of the Enterprise, through marriage, passport, and visa fraud, to travel,

28

9

1   among other countries, between China, Hong Kong, and the United States, and to flee China and

2   Hong Kong in the event that the criminal activity of the Enterprise was discovered."  (Doc. No.

3   151, p. 4, ll. 9-12).  As the Ninth Circuit in Beardslee itself acknowledged, "[c]onspiracy is a

4   continuing offense."  197 F.3d at 388.  Accordingly, the conspiracy straddles the effective date of

5   the current version Section 2S1.1, and Section 2S1.1(a)(1) may be used to determine the base

6   offense level.

7        3.    Defendant XU Chaofan Abused a Position of Trust under Guideline Section 3B1.3

8   Defendant XU Chaofan argues that because United States crimes are at issue here,

9   therefore foreign entities cannot be a victim for purposes of the abuse of trust enhancement under

10  Guideline Section 3B1.3.  (Doc. No. 732, p. 14, l. 24 to p. 15, l. 15).  As discussed above, the

11  fraud against the Bank of China may properly be considered for sentencing.  Defendant relies on

12  the Ninth Circuit's unpublished disposition in United States v. Morales-Olivarria, 119 F.3d 8

13  (table), 1997 WL 406738 (9th Cir. July 16, 1997).  This authority may not be cited under Ninth

14  Circuit Rule 36-3(c), which states that, for unpublished dispositions issued before January 1,

15  2007, "[u]npublished dispositions and orders of this Court issued before January 1, 2007 may not

16  be cited to the courts of this circuit," except for purposes of law of the case, claim or issue

17  preclusion, or for certain factual purposes, none of which are relevant here.  This Circuit rule is

18  consistent with Federal Rule of Appellate Procedure 32.1, which permits citation of unpublished

19  authority, provided it is issued on or after January 1, 2007.  Thus, defendant may not cite the

20  unpublished disposition in Morales-Olivarria.

21  Even if Morales-Olivarria had any weight, it is distinguishable.  Morales-Olivarria dealt

22  with whether a foreign official could be deemed to possess a position of trust in an alien

23  smuggling case.  The Ninth Circuit panel held that the official could not, since the "victim" for the

24  crime of alien smuggling was the United States.  Here, as discussed above, the specified

25  underlying activity for the money laundering conspiracy at issue here is fraud against a foreign

26  bank, which clearly contemplates the foreign bank as the victim.  Defendant's argument is without

27  merit, and the abuse of trust enhancement may properly be applied.

28

4.      An Enhancement under Section 2B1.1(b)(9) for Commission of the Offense
        outside the United States or Sophisticated Means is Warranted

Focusing upon only the first two prongs of Guideline Section 2B1.1(b)(9)(A) and (B),

defendant XU Chaofan argues there was no proof that he relocated to another jurisdiction to avoid

law enforcement or that the scheme was committed from outside the United States.  (Doc. 732, p.

15, l. 17 to p. 16, l. 4).  Defendant's claim that any relocation was to "find a lower cost of living"

is belied by the evidence.  Defendants relocated to Hong Kong and transferred massive sums to

that region and then relocated to the United States to avoid, at a minimum, Chinese law

enforcement.  Defendant's claim that commission of the offense "from outside the United States"

requires a targeting of a victim in the United States provides only a sufficient, but not a necessary,

condition for the enhancement.  It is likely most offenses qualifying for the enhancement

comprehend this scenario, but it is also possible that a fraud outside the United States that targets

foreign victims can be the focus of a federal crime, such as the specified underlying activity

described in 18 U.S.C. § 1956(c)(7)(B)(iii).  In any event, defendant fails to address the

"sophisticated means" prong in Guideline Section 2B1.1(b)(9)(C).  As discussed in the

government's initial sentencing filing, the manipulation of the Bank of China's internal accounts,

the alteration of bank records, the use of the Ever Joint entities and circular transactions amply

support the enhancement for use of sophisticated means.  U.S.S.G. § 2B1.1(b)(9), comment.

n.8(B) ("[c]onduct such as hiding assets or transactions, or both, through the use of fictitious

entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated

means").

C.      Defendant KUANG's Guideline Arguments Are Without Merit

        In addition to the argument regarding use of Section 2S1.1(a)(1), which is discussed above

in Section A, defendant KUANG challenges use of the $482 million loss figure to determine the

enhancement under Section 2B1.1(b)(1).  (Doc. No. 726, p. 7, lines 14-22).  This argument is

directly related to the Section 2S1.1(a)(1) argument.  As discussed above, it is appropriate to use

the loss for the bank fraud, because defendants are criminally responsible for the underlying

offense.  Defendant KUANG also objects to the Pre-Sentence Report's application of the Section 2B1.1(b)(9) enhancement for relocating to another jurisdiction, commission of the scheme from outside the United States, and involvement of sophisticated means.  As discussed above in Section A, the Sentencing Commission intended the use of the entirety of Section 2B1.1 -- that is, "the base offense level, specific offense characteristics, cross references, and special instructions for the underlying offense" --  to calculate the base offense level under Section 2S1.1(a)(1).  U.S.S.G. App. C, amend. 634 (2001).  Moreover, as described in the government's initial sentencing position and in the preceding section above, this enhancement is amply supported by the record, given the relocation from China and Hong Kong to the United States (it should be noted that the Guideline speaks only in terms of evading "law enforcement or regulatory officials," and is not framed in terms of "United States" law enforcement or regulators), commission of a substantial part of the scheme from outside the United States, and the use of sophisticated means.  (Doc. No. 722, p. 21, ll. 2-11).  Finally, as to defendant's objection to the enhancement under Section 2B1.1(b)(14)(A) for deriving more than $1,000,000 from a financial institution, defendant again argues this enhancement does not apply given his reliance on Section 2S1.1(a)(2).  As discussed above, Section 2B1.1 may properly be used to calculate the base offense level under Section 2S1.1(a)(1).

Defendant also seeks a mitigating role adjustment under Section 3B1.2.  Even an individual who is the least culpable of a group is not necessarily entitled to a mitigating role adjustment.  See United States v. Johnson, 297 F.3d 845, 874-75 (9th Cir. 2002) (defendant not working during entire duration of telemarketing scheme still not entitled to minimal role adjustment).   Given defendant's long-term participation in the RICO conspiracy, her commission of immigration fraud as the first stage of the contingency plan to escape from China should that become necessary, and the large amounts of tainted property that she handled, a mitigating role adjustment is not warranted.

D.   <u>Defendant XU Chaofan's Objections to His Pre-Sentence Report Are Without Merit</u>

Defendant XU Chaofan objects to a finding that the defendants acted together in an attempt to defraud the Bank of China of at least $482 million.  (Doc. No. 732, p. 2, ll. 9-12).  As described above in Section A, this loss amount is supported by the evidence.  Defendant asserts that approximately $170 million in foreign exchange losses should be deducted, but the testimony made clear that money was stolen from the interbranch accounts to make up for this loss.  This theft was part of the fraud against the Bank.

Defendant XU Chaofan suggests that certain amounts were loaned to construct the two-story office building and hotel in Kaiping and cannot be considered as losses. (Doc. No. 732, p. 2, l. 27 to p. 3, l. 4).  Even if amounts from the $482 million were used for that project, the relevant point is that those amounts were stolen. In any event, as YU Zhendong testified, the loan for construction of this complex was not repaid.  (YU Zhendong deposition [3/6/08] p. 637, ll. 7-13).

Defendant XU Chaofan also contends that the loss should be reduced because "machinery and raw materials of an unknown value were obtained and sent back to the industrial concerns." (Doc. No. 732, p. 2, ll. 21-28). That point is not relevant; instead, the relevant issue is the $482 million was stolen from the bank, and any subsequent use cannot legitimize that fraud.  In any event, the testimony cited by defendant XU Chaofan related to whether the funds sent to the Ever Joint entities had any business purpose; as the Ernst and Young forensic expert testified, the enormous fund flows through those entities, compared to the relatively small amount of actual business that those entities did conduct, made clear that the Ever Joint entities were conduits for defendants' unlawful activities

Defendant argues that he was not married to KUANG Wan Fang and that his marriage to Mei Xie PENG was legitimate.  (Doc. No. 732, p. 3, ll. 6-15).  The evidence, including Wai Kwong HO's testimony that he was told at the outset of his involvement in the false marriage with KUANG Wan Fang that KUANG was married to a high-level official at the bank in Kaiping and the wedding photograph of XU Chaofan and KUANG Wan Fang (Trial Ex. 140(12)), make clear XU Chaofan was married to KUANG Wan Fang, and the evidence regarding XU Chaofan's

marriage ceremonies with Mei Xie PENG in Hong Kong and at the Los Angeles International Airport (which was a double ceremony together with XU Guojun and Joanne XIE) demonstrate the fraudulent nature of that marriage. Moreover, these findings are material to sentencing on the RICO conspiracy and other charges, because they demonstrate the coordinated nature of the marriage and immigration fraud for all of the defendants and their importance with regard to the overall scheme.

Finally, with regard to findings as to leadership and role (Doc. No. 732, p. 3, ll. 16-21), these findings (which are at ¶¶ 44 and 51 of the Pre-Sentence Report, and describe XU Chaofan acting together with XU Guojun or YU Zhendong) are supported by the evidence and testimony in the record, including the testimony of YU Zhendong, YU Hongbin, DING Hao, and the evidence regarding the fraud.

E.   <u>Defendants' Analysis under 18 U.S.C. § 3553(a) Fails to Account Properly for the Entire Offense Conduct in This Case</u>

Each defendant proffers an analysis under 18 U.S.C. § 3553(a), focusing mainly on the individual circumstances of the defendant. In doing so, defendants, as in the case in defendant KUANG, take a narrow view of the offense that fails to account for a fraud scheme that lasted for over 10 years and involved the loss of $482 million to the Bank of China. Instead, defendants focus on their individual circumstances and discuss the Guidelines only to note that they are now advisory. Defendants' submissions fail to include any additional discussion, as is required by post-<u>Booker</u> Ninth Circuit caselaw, "the kinds of sentence and the sentencing range established by the Guidelines; any pertinent policy statement issued by the Sentencing Commission; [and] the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." <u>United States v. Carty</u>, 520 F.3d 984, 991 (9th Cir.) (en banc), <u>cert. denied</u>, 128 S. Ct. 2491 (2008). Indeed, the en banc court in <u>Carty</u> noted that the

1    Guidelines "are one factor among the § 3553(a) factors that are to be taken into account in arriving

2    at an appropriate sentence."  Id.[3]

3          1.    XU Chaofan's Grounds

4          Defendant XU Chaofan initially seeks a lower sentence due to compulsive gambling.

5    (Doc. No. 732, p. 18, l. 12 to p. 20, l. 22).  Although defendant refers to a report by Dr. Eddie

6    Chiu, who is a psychologist in the San Francisco Bay Area who works with Chinese-speaking

7    problem gamblers in that area, that report is not attached to XU's sentencing position.  Even if XU

8    Chaofan provided support for his contention, it is clear that defendant is in a different situation

9    than those described in the cases and cited materials he provides.  In an Asian Week article cited

10   by defendant XU Chaofan, Chiu describes "classic problem gamblers" who "bet to escape from

11   their own problems and anxieties.  They bet at extremely high rates and when they stop gambling

12   they go through depression, similar to withdrawal from drug addiction."  N. Banerjee, "Addicted

13   to Big Money -- and Bad Odds," Asian Week, Apr. 6-12, 2001, available at

14   asianweek.com/2001_04_06/bay1_gambling.html.  The article notes that such gambling leads to

15   family problems, including domestic violence, and the problem gambler typically hides the

16   problem.  Id.  That is not the situation here.  There is no indication of any antisocial or depressive

17   behavior during the conduct in this case, which extended over a decade.  Indeed, all four

18   defendants shared the benefits of the fraud scheme, as evidenced by not only the joint trips

19   overseas, but also the lavish lifestyle they maintained in Hong Kong and elsewhere.  In any event,

20   it cannot be said that this offense was in any way the product of any sort of pathological gambling.

21   The unlawful transfers from the Bank's interbranch accounts preceded the gambling activity, and

22

23

24          [3]    Defendant YU cites to United States v. Ameline, 400 F.3d 646 (9th Cir. 2005),

25   reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005) (Doc. No. 731, p. 4, l. 28 to p. 5, l. 4).  In

26   fact, the order granting rehearing en banc withdrew the panel opinion, and the en banc court
     issued its opinion at 409 F.3d 1073 (9th Cir. 2005) (en banc).  The en banc opinion concerns
     proper review of a sentence imposed in the pre-Booker binding Guidelines era that is affected by

27   unpreserved Booker error.  The government submits the Ninth Circuit's en banc opinion in Carty

28   presents the proper standard for post-Booker sentencing in district courts in the Ninth Circuit.

15

the gambling overseas was in keeping with the lifestyle that defendants sought to maintain in Hong Kong and elsewhere.

Defendant XU Chaofan also seeks a downward departure based on the twelve-year sentence received by YU Zhendong.  (Doc. No. 732, p. 21, l. 1 to p. 23, l. 3).  YU Zhendong is not similarly situated to XU Chaofan.  As was made clear at trial, YU Zhendong cooperated well before defendants were even apprehended and did so with authorities from China, Hong Kong, Canada, and the United States.  In addition, YU Zhendong agreed to forfeit his immigration rights and return to China for prosecution there.

Defendant's authority does not involve this situation.  The Ninth Circuit's opinion in United States v. Tzoc-Sierra, 387 F.3d 978 (9th Cir. 2004) , involved similarly situated defendants without the factor of cooperation and a departure of only ten months to achieve roughly equivalent sentences.  The Eighth Circuit in United States v. Krutsinger, 449 F.3d 827 (8th Cir. 2006), dealt with the departure to achieve equivalency between two cooperating defendants.  Id. at 830.  There is in fact a material difference between the circumstances of YU Zhendong and XU Chaofan, and this ground ought not serve as a mitigating factor under 18 U.S.C. § 3553(a).

Defendant XU Chaofan next seeks a mitigated sentence based on the harshness of presentence confinement based on his status as a deportable alien.  (Doc. No. 732, p. 6, ll. 6-17).  The Ninth Circuit recognized this ground for Guideline departure in United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir. 1996), and made reference to it in United States v. Davoudi, 172 F.3d 1130 (9th Cir. 1999), but in United States v. Martinez-Ramos, 184 F.3d 1055 (9th Cir. 1999), the Ninth Circuit held that the ground was not available when the offense of conviction, 8 U.S.C. § 1326, could be committed only by aliens whose conduct made them deportable.  184 F.3d at 1058.  Defendant is in a similar situation, in that he was a foreign national who falsely obtained and used a visa to enter the country.  Moreover, there has been no factual showing that defendant in fact is suffering harsher conditions than other prisoners.

Defendant also seeks a lower sentence due to the costs of holding the defendant in prison.  This ground, however, does not identify any factor peculiar to defendant that suggests the costs

16

1    are unjustified.  Defendant relies on United States v. Angelos, 345 F. Supp. 2d 1227 (D. Utah

2    2004), aff'd, 433 F.3d 738 (10th Cir. 2006), but the court there reduced the Guideline portion of a

3    sentence for drug trafficking and use of a firearm under 18 U.S.C. § 924(c) to one day, to be

4    added to the fixed 55-year term for the § 924(c) offenses.  Here, defendant has not identified any

5    circumstance that makes the costs of holding him unjustified, as opposed to any other defendant.

6         Finally, defendant XU Chaofan argues that his activity in the United States "is wagging the

7    very large dog of the activities he is alleged to have committed in China" and relies on the Fifth

8    Circuit's opinion in United States v. Threadgill, 172 F.3d 357 (5th Cir. 1999), which involved a

9    departure from a money laundering Guideline term that apparently was calculated under the pre-

10   2001 version of the Section 2S1.1 Guideline.  As discussed above, the money laundering

11   conspiracy is based on the specified unlawful activity of foreign bank fraud and the post-

12   amendment Guideline now expressly directs consideration of the underlying offense.  Threadgill is

13   inapplicable here, and it is appropriate to consider the fraud against the Bank of China.

14        2.    The Totality of the Factors in § 3553(a) Support a Sentence Within the Guidelines

15        For XU Chaofan and XU Guojun, the factors in § 3553(a) support the recommended

16   Guideline sentence.  As described above, it is appropriate to consider the harm to the Bank of

17   China and, as set forth in detail in the government's initial sentencing papers, the Bank of China

18   suffered a significant amount of harm. The trial testimony of the Bank auditors detailed the

19   amount of resources necessary to discover the total extent of the fraud.  These defendants'

20   proffered reports do little to show why the individual characteristics portrayed mitigate their

21   conduct.  If anything, the characteristics described at trial show that XU Chaofan had an assertive

22   nature that manifested itself both in his leadership in organizing and implementing the fraud and

23   in enjoying a high-maintenance lifestyle that included luxury apartments, overseas travel, and

24   gambling.  In turn, XU Guojun's diligent nature was suited for managing the operations in

25   Kaiping, which were directed not only to the fraud but also fabricating documents to conceal it for

26   the Bank's audits, as well as those at Ever Joint in Hong Kong.  A substantial sentence is also

27

28

                                    17

1   required to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B),

2   particularly for similarly situated corrupt officials who have absconded to the United States.

3          For KUANG Wan Fang and YU Ying Yi, the government submits that the Guideline

4   range is appropriate. These defendants' ranges are lower than those for their spouses XU Chaofan

5   and XU Guojun, and that lower range takes into account their absence of an aggravating role or

6   position of trust.  The sentencing ranges are appropriate given their conduct in this case, which

7   spanned the time from the 1994 false marriages, the transactions in Hong Kong, Canada, and the

8   United States, and the flight into the United States.

9   F.   Conclusion

10          The government respectfully requests the Court to sentence defendant in accord with the

11   Pre-Sentence Report and its sentencing positions.

12

13   DATED:        April 28, 2009              Respectfully Submitted,

14                                            GREGORY A. BROWER
                                             United States Attorney

15                                            ERIC JOHNSON
                                             Assistant United States Attorney

16

17                                            _____/s/_____
                                             KRISTA TONGRING

18                                            Trial Attorney

19                                            RONALD CHENG
                                             Special Trial Attorney

20

21

22

23

24

25

26

27

28

18

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR-S-02-0674-PMP(LRL) |
| Plaintiff, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| XU Chaofan, also known as<br>HUI Yat Fai, *et al.*, | ) |
| Defendants. | ) |

Pursuant to the rules of the above Court, I, Krista Tongring, hereby certify that I am an employee of the United States Department of Justice, and that on this date I caused the foregoing document - United States' Sentencing Memorandum in Response to Objections of Defendant Xu Chaofan (Doc. No. 732) - to be delivered to all parties to this action by:

| | |
|---|---|
| _____ | Placing a true copy thereof in a sealed, stamped envelope with The United States Postal Service at Las Vegas, Nevada. |
| _____ | Personal Delivery |
| _____ | Facsimile (Fax) |
| _____ | Federal Express or other overnight delivery service |
| ___X__ | Via Electronic Filing |

addressed as follows:

Mitchell Posin
Posin & Posin
601 S. Tenth St., #100
Las Vegas, NV 89101
Counsel for XU Chaofan

Lawrence Litman
Law Office of Lawrence J. Litman
200-468 Camden Dr.
Beverly Hills, CA 90210
Counsel for KUANG Wan Fang

Brett Whipple
Brett O. Whipple, Esq.
1100 S. Tenth St.
Las Vegas, NV 89104
Counsel for XU Guojun

Travis Shetler
Travis E. Shetler, P.C.
618 S. 7th St.
Las Vegas, NY 89101
Counsel for YU Ying Yi

DATED: April 28, 2009                    _____/S/_____
                                         KRISTA TONGRING